UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. CARR,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendants. | No. 1:20-cv-00217-EPG<br><br><u>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT</u><br><br>(ECF Nos. 14, 19) |

　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 9, 15).

　　　Plaintiff argues that the ALJ erred by rejecting the opinion of examining physician Dr. Satish Sharma and the opinion co-signed by treating physician Dr. Jeremiah Fillo and family nurse practitioner Margaret Jacobs. (ECF No. 14 at 6-11). At a hearing on March 4, 2021, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs and supplemental briefs of the parties, and the applicable law, finds as follows:

///

1

# I. CHANGE IN SOCIAL SECURITY REGULATIONS

Plaintiff's motion for summary judgment relies on Ninth Circuit precedent that requires an ALJ to give varying amounts of weight to different types of physicians based on their treating relationship with Plaintiff. (ECF No. 14 at 9-10) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987))). The Commissioner argues that such decisions have been supplanted by intervening regulations. (ECF No. 20 at 12-18). At the hearing, the parties requested, and the Court granted, leave to file supplemental briefs on the matter. (ECF No. 24) (minutes for telephonic proceedings). The Commissioner and Plaintiff each filed their supplemental briefings on March 25, 2021. (ECF Nos. 25 & 26).

## A. Applicable Regulations

The Commissioner promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. Previously, regulations and case law required ALJs to give physicians' opinions different weights, depending on the relationship between the physician and the claimant. *See* 20 C.F.R. §§ 404.1527(c) & 416.920(c); *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014) (discussing different weights for treating, examining, and non-examining physicians). The 2017 regulations, in contrast, do not give different weights to different physician types in most circumstances. *See* 20 C.F.R. §§ 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); 416.920c(a) (same); *see also* Charles Terranova, *Somebody Call My Doctor: Repeal of the Treating Physician Rule in Social Security Disability Adjudication*, 68 Buff. L. Rev. 931, 945-60 (2020) (discussing common-law origins of the treating-physician rule, how Commissioner adopted regulations implementing a form of the rule, and 2017 regulations' modification of the rule).

Plaintiff argues these regulations do not supplant the treating-physician rule. (ECF Nos. 22 at 2-4; 26 *passim*). Defendant disagrees and argues that the new regulations, which emphasize how well the opinions are supported by and consistent with the record, control the relevant

analysis.

Plaintiff filed his claim on August 7, 2017, (A.R. 19), which is after March 27, 2017. Therefore, to the extent the new regulations are applicable, they apply to him.

**B.** *Chevron* **Deference**

There is a two-step framework for determining whether an agency's interpretation of an ambiguous statute is entitled to judicial deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984). "At the first step, we ask whether the statute's plain terms directly address the precise question at issue. If the statute is ambiguous on the point, we defer at step two to the agency's interpretation so long as the construction is a reasonable policy choice for the agency to make." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005) (internal quotation marks, citations and alterations omitted). "To maintain the proper separation of powers between Congress and the executive branch, we must 'exhaust all the traditional tools of construction' before we 'wave the ambiguity flag.' " *Medina Tovar v. Zuchowski*, 982 F.3d 631, 634 (9th Cir. 2020) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

"A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Brand X*, 545 U.S. at 982.

The Court first turns to the *Chevron* framework. Congress required the Commissioner to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence … in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a). The Social Security Act provides several other requirements when making a determination of disability:

> (A) *An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require*. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by

3

> medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability. Any non-Federal hospital, clinic, laboratory, or other provider of medical services, or physician not in the employ of the Federal Government, which supplies medical evidence required and requested by the Commissioner of Social Security under this paragraph shall be entitled to payment from the Commissioner of Social Security for the reasonable cost of providing such evidence.
>
> (B) In making any determination with respect to whether an individual is under a disability or continues to be under a disability, *the Commissioner of Social Security shall consider all evidence available in such individual's case record*, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination *the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis*.

42 U.S.C. § 423(d)(5) (emphases added).

The plain terms of the Social Security Act do not dictate how ALJs must interpret different physicians' opinions. Section 405(a) requires the Commissioner to adopt rules "for the nature and extent of the proofs and evidence" to prove disability. Section 423(d)(5)(A) requires the Commissioner to base determinations of disability on "medical and other evidence … as the Commissioner of Social Security may require." Section 423(d)(5)(B) requires the Commissioner to "consider all evidence available in [a claimant's] case record" and to "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence … necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis."

///

4

| | |
|---|---|
| 1 | None of these statutory provisions directly address what evidentiary weight should be |
| 2 | given to any particular type of physician. Even though section 423(d)(5)(B) refers to treating |
| 3 | physicians and requires the Commissioner to obtain information from the treating physician |
| 4 | "prior to evaluating medical evidence from any other source on a consultative basis," it does not |
| 5 | mandate the Commissioner to give the treating source additional weight. *See Jones v. Saul*, No. |
| 6 | 2:19-CV-01273-AC, 2021 WL 620475, at *7 (E.D. Cal. Feb. 17, 2021) (finding that § |
| 7 | 423(d)(5)(B) does not require additional weight to treating physicians; "[r]ather, the Act requires |
| 8 | that the Commissioner try to obtain and evaluate evidence from a treating source prior to |
| 9 | evaluating other sources. The new regulation does not eliminate this requirement, nor does it |
| 10 | preclude the Commissioner from giving decisive weight to a treating source in a particular case"). |
| 11 | The Court is also cognizant that "Congress has conferred on the [Commissioner] exceptionally |
| 12 | broad authority to prescribe standards" under various sections of the Social Security Act. *Heckler* |
| 13 | *v. Campbell*, 461 U.S. 458, 466 (1983) (concerning section 405(a)); *accord Schweiker v. Gray* |
| 14 | *Panthers*, 453 U.S. 34, 43 (1981) ("The Social Security Act is among the most intricate ever |
| 15 | drafted by Congress. … Perhaps appreciating the complexity of what it had wrought, Congress |
| 16 | conferred on the Secretary exceptionally broad authority to prescribe standards for applying |
| 17 | certain sections of the Act."); *cf. Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993) (holding |
| 18 | that Second Circuit's caselaw on treating-physician rule was supplanted by Commissioner's 1991 |
| 19 | regulations implementing a less deferential treating-physician rule). |
| 20 | Hence, the statute is ambiguous on the issue of how much weight to give different types of |
| 21 | physicians. Thus, *Chevron*'s step one is satisfied. |
| 22 | "At *Chevron*'s second step, we ask whether the agency's interpretation is reasonable—or |
| 23 | rational and consistent with the statute." *City & Cty. of San Francisco v. U.S. Citizenship &* |
| 24 | *Immigr. Servs.*, 944 F.3d 773, 799 (9th Cir. 2019) (internal quotation marks and citation omitted). |
| 25 | Rules are not reasonable if they constitute "an arbitrary and capricious interpretation of [a] |
| 26 | statutory provision." *East Bay Sanctuary Covenant v. Biden*, --- F.3d ----, 2021 WL 1220082, at |
| 27 | *17 (9th Cir. March 24, 2021). |
| 28 | /// |

Here, the Commissioner's rules provide a method for assessing differing medical opinions. The regulations set supportability[1] and consistency[2] as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). There is nothing inherently unreasonable about giving medical opinions greater weight if they are better supported by objective medical evidence or consistent with other evidence.

The regulations also provide other factors and subfactors, which apply when there are multiple medical opinions that are "both equally well-supported … and consistent with the record … but are not exactly the same[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Plaintiff does not argue that the new rules are unreasonable. Although Plaintiff cites to cases finding that the regulations at issue did not supplant certain Ninth Circuit precedent, the cases to which Plaintiff cites do not find the rules are invalid. *Thompson v. Commissioner of Social Security*, No. 2:20-cv-0003-KJN, 2021 WL 1118656 (E.D. Cal. Mar. 24, 2021) (finding ALJ erred under new regulations, while noting hesitation in applying new regulations); *Kathleen G. v. Commissioner of Social Security*, 2020 WL 6581012 (W.D. Wash. Nov. 10, 2020) (noting the regulations do not "clearly supersede the 'specific and legitimate' standard" but not addressing the validity of the regulations generally). Other cases have also found the regulations are entitled to *Chevron* deference. *See, e.g., Jones*, 2021 WL 620475, at *6-8 (concluding new regulations are entitled to *Chevron* deference); *Dany Z. v. Saul*, --- F. Supp. 3d ----, 2021 WL 1232641, at *8-10 (D. Vt. Mar. 31, 2021) (in discussing *Chevron*, finding Commissioner had authority to promulgate the new regulations, implying section 405(a) is ambiguous, and holding the new regulations are not arbitrary and capricious).

Because the agency's interpretation is a reasonable policy choice for the agency to make for this ambiguous statutory issue, the Court finds that the regulations are entitled to *Chevron* deference with respect to the weight given to various medical sources.

---

[1] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[2] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

### C. Caselaw for Treating Physician Rule

The new regulations are inconsistent with the treating-physician rule. Under that rule, the ALJ was required to give different weight to different physicians, depending on the relationship between the physician and the claimant. This rule has origins in caselaw. "The treating physician rule at issue here was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003) (citations omitted); *accord* Rachel Schneider, *A Role for the Courts: Treating Physician Evidence in Social Security Disability Determinations*, 3 U. Chi. L. Sch. Roundtable 391, 396 (1996) ("Before 1991 the SSA regulations did not provide a uniform statement of the scope of the treating physician rule. Instead, the rule only existed at common law.").

The Ninth Circuit adopted a formulation of the treating-physician rule in *Murray v. Heckler*, 722 F.2d 499 (9th Cir. 1983). There, the court noted the Second, Fifth and Sixth Circuits provide greater weight to such opinions and then held that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 502. The court did not hold, however, that the treating-physician rule "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Brand X*, 545 U.S. at 982.

Accordingly, the treating-physician rule must yield to the intervening regulation. *See id.*; *see also Jones*, 2021 WL 620475, at *9 ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").[3]

---

[3] At the hearing, Plaintiff argued that the standards for *articulating* the ALJ's decision remain despite the new regulations. In his supplemental brief, Plaintiff argues that "[e]ffective judicial review of agency decisions requires effective articulation by the agency's ALJs of the reasons underlying their decisions[.] It is the purview of the courts—not the agency itself—to establish what level of articulation the court requires." (ECF No. 26 at 4). The Commissioner disagrees and points the Court to a series of cases that reject that position. (*See* ECF No. 25).

## II. MEDICAL EVIDENCE

### A. Satish Sharma, MD

Plaintiff argues that the ALJ improperly rejected the opinion of the examining physician Satish Sharma, MD.

As discussed above, the new regulations do not defer to or give any specific evidentiary weight to any medical opinions. Rather, they require that the ALJ determine their persuasiveness by looking mostly at supportability and consistency, and then, only in some instances, at other factors:

> (a) How we consider medical opinions and prior administrative medical findings. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). …
>
> (b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or

---

In the past, the Ninth Circuit has held that an ALJ may reject a contradicted treating or examining doctor's opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The new regulations provide, arguably in contrast, "[w]e are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (same).

Some courts have continued to endorse the Ninth Circuit articulation requirement as one of appellate review, outside the purview of regulations. *See Thompson v. Comm'r of Soc. Sec.*, No. 2:20-CV-0003-KJN, 2021 WL 1118656 at *8 (E.D. Cal. Mar. 24, 2021) ("the ALJ is still required to fully articulate the rationale relied upon" in part because "'[t]he ALJ must provide sufficient reasoning that allows for review.'" (quoting *Lambert*, 980 F.3d 1266, 1277 (9th Cir. 2020))). The *Thompson* court reasoned that "if an ALJ were allowed to cherry-pick the record for facts that align with an 'unpersuasive' finding and ignore facts that might otherwise call that finding into question, a reviewing court would be required to ignore large portions of the record simply because the ALJ decided to avoid discussing evidence favorable to a claimant. However, the Ninth Circuit has long held that a court may not affirm by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). *See also Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) ("[The 'specific and legitimate'] standard is not an articulation of how ALJs must weigh or evaluate opinions, but rather a standard by which the court evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence. Whatever factors the Commissioner considers in evaluating a medical opinion, he must explain his reasoning to allow for meaningful judicial review, and the Ninth Circuit's 'specific and legitimate' standard is merely a benchmark against which the Court evaluates that reasoning.").

Because, as discussed below, the Court finds that under either the new regulations or the previous articulation standards, the ALJ should be affirmed, the Court declines to take a position on this issue.

decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. …

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c, 416.920c.

Here, the ALJ provided the following reasons for rejecting Dr. Sharma's opinions:

The consultative examiner, Satish Sharma, M.D., reviewed the record and examined the claimant in September 2017. Dr. Sharma limited the claimant to light work except that the claimant could not bend or stoop more than

9

> occasionally, and he had decreased hearing in the left ear (Exhibit B8F). This is not very persuasive. For one, there is no reduction in strength, sensation, reflexes, grip, ambulation, or range of motion even in [his] own examination report; therefore, it is unclear why Dr. Sharma reduced the claimant to light exertional level. [H]e cited no specific support from [his] examination to justify support for the lifting and carrying limitations of 10 and 20 pounds. [H]e observed full range of motion, 5/5 upper extremity strength and normal muscle tone. However, more persuasive is the notation that claimant can hear conversational tones, and does not wear a hearing aid. This is consistent with other presentations in the medical evidence of record. The examination showed tenderness in the spine and some pain on flexion and extension, which does support a reduction in postural activity such as stooping.

(A.R. 27-28).

Plaintiff argues that the ALJ erred by "rejecting Dr. Sharma's lifting and carrying limitations" because Dr. Sharma "noted that the plaintiff 'has tenderness and decreased range of motion of the lumbar spine' in the paragraph immediately preceding his functional assessment." (ECF No. 14 at 7-8) (quoting A.R. 814). Plaintiff argues that this finding is consistent with Plaintiff's medical record, which shows nearly monthly treatment for severe chronic thoracic back pain for the last four years. (*Id.*) Because, according to Plaintiff, heavy lifting can exasperate back pain and cause further injury, Dr. Sharma's opinion is reasonable based on his examination of Plaintiff, consistent with medical evidence in the record, and supported by substantial evidence.

Although aspects of Dr. Sharma's opinion about lifting and carrying may be consistent with aspects of the record, the ALJ also noted that Dr. Sharma's opinion was not supported by other parts of the record. Under the new standards defining supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ accurately noted that Dr. Sharma's opinion "cited no specific support from [his] examination to justify support for the lifting and carrying limitation of 10 and 20 pounds." (A.R. 28) (citing A.R. 814). Moreover, the ALJ also concluded that some of Dr. Sharma's findings were inconsistent with his own opinion. As the ALJ noted, (A.R. 28), Dr.

Sharma found that Plaintiff has a full range of motion and 5/5 upper extremity strength and normal muscle tone, (A.R. 814). The ALJ was permitted to conclude that Dr. Sharma's findings were internally inconsistent. Thus, the ALJ properly evaluated the medical evidence under the criteria provided by the new standards.[4]

### B. Jeremiah Fillo, M.D. and Margaret Jacobs, F.N.P.

Plaintiff argues that the ALJ erred by rejecting the opinion cosigned by Plaintiff's treating providers Dr. Jeremiah Fillo, M.D., and nurse practitioner Margaret Jacobs, F.N.P.

Here, the ALJ provided the following reasons for rejecting Dr. Fillo and Jacobs's opinion:

> Finally, in June 2018, the claimant's treating physician, Jerimiah D. Fillo, M.D., submitted a medical opinion. He found the claimant could only stand, walk, and sit for 3 hours and change positions every 30 minutes due to pain. The claimant was further limited to lifting 20 pounds occasionally, 5 pounds frequently, never twist, occasionally stoop, crouch, climb (stairs), but never climb ladders, kneel, crawl, or balance. He was further restricted from reaching, handling, fingering, feeling, pushing and pulling. The claimant would be absent more than 3 times a month (Exhibit B14F). The extreme limitations in this opinion are not persuasive. Dr. Fillio's office notes do not support these restrictions. The medical evidence of record noted a reduction in pain from 6 of 10 to 2 of 10 in between January and May 2018. The claimant's gait and station has never shown abnormalities aside from the initial presentation at physical therapy, and sensation, strength, reflexes have all remained intact (Exhibits B9F, 11F and B12F). There has been no allegation or documentation to support limitations in handling, feeling or fingering aside from the very recent surgery on the right shoulder. Moreover, there is no basis given for absences.

(A.R. 28).

Plaintiff argues that his treating providers' opinion is consistent with their own opinions and with the record, given his long history of chronic thoracic back pain. (ECF No. 14 at 9). However, the ALJ properly pointed to aspects of the opinion that were not supported by the record. For instance, as the ALJ noted, Dr. Fillo and Jacobs noted Plaintiff "reports his pain today as 6/10" sometime in January 2018. (A.R. 867). Plaintiff's pain subsequently reduced: his "Lt rip pain" was "2/10" on May 23, 2018. (A.R. 854). Yet in June 2018, as the ALJ noted, Dr. Fillo and Jacobs found Plaintiff had extreme limitations. (A.R. 928). Those limitations were repeatedly

---

[4] Moreover, to the extent the Ninth Circuit's articulation standard of specific and legitimate applies, these reasons are sufficiently specific and legitimate and supported by substantial evidence.

explained as being "due to pain." (*See id.*). Given the recent reduction in pain to 2/10, the ALJ permissibly found the opinion was insufficiently supported and, thus, less persuasive.

In addition, as the ALJ noted, Plaintiff had several normal findings. For instance, he has been found to have a normal gait. (A.R. 846 ("Normal nonantalgic gain and transfers without assistive device."), 850 (same)). This is inconsistent with Dr. Fillo and Jacobs's opinion for a limited ability to walk. (*See* A.R. 928) (noting 3 hour "Max ability to stand and walk (with normal breaks) during an 8-hour workday"). The ALJ noted there was no support for the opinions' limitations on "handling, feeling or fingering aside from the very recent surgery on the right shoulder." (A.R. 28). Plaintiff argues that Plaintiff has had various back problems but does not specifically contest this finding. (*See* ECF No. 14 at 9). Accordingly, the ALJ properly found that Dr. Fillo and Jacobs's opinion was less persuasive because it was not supported.[5]

## III.   CONCLUSION AND ORDER

Thus, the decision of the Commissioner of Social Security is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **April 30, 2021**                         /s/ Erica P. Grosjean
                                                            UNITED STATES MAGISTRATE JUDGE

---

[5] The same rationales also constitute specific and legitimate reasons supported by substantial evidence for rejecting the opinion.